UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

DARRYL LEE ELKINS, #114337  )
                            )
v.                          )    No. 2:08-CV-266
                            )    *Judge Jordan*
DAVID A. SEXTON, Warden[1]  )

## MEMORANDUM OPINION

Darryl Lee Elkins, a prisoner in the Northeast Correctional Complex [NECX}, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under a state court judgment, [Doc. 1]. Respondent David A. Sexton, NECX Warden, has filed copies of petitioner's state court record and an answer to the petition, arguing that the grounds offered in this pleading will not support the granting of the writ, [Docs. 7-8]. Respondent acknowledges that petitioner has exhausted his claims by presenting them first to the state courts. Thus, the case is ripe for resolution.

### I. Procedural History

In 1999, a jury in the Criminal Court for Sullivan County, Tennessee convicted petitioner of rape of a child and attempted rape of a child. For these

---

[1] David A. Sexton, who was appointed as the NECX Warden after the petition and answer were filed, has been substituted for former Warden Howard Carlton as the respondent. Tennessee Department of Correction Website, State Prisons, Biography of Warden David A. Sexton, http://www.tn.gov/correction/institutions/necx.html (Last visited Oct. 27, 2011).

offenses, the trial court imposed an effective 37-year sentence (twenty-five years for the rape and a consecutive twelve years for the attempted rape). Petitioner's convictions were affirmed by the state appellate courts on direct review. *State v. Elkins*, No. E2001-0125-CCA-R3-CD, 2002 WL 464799 (Tenn. Crim. App. Mar. 27, 2002), *aff'd*, 102 S.W.3d 578 (Tenn. 2003) [Doc. 7, Attachs. 1-2]. Petitioner then sought post-conviction relief. The post-conviction court vacated petitioner's conviction for attempted child rape, but left intact his child rape conviction, [*Id.*, Attach. 3]. Petitioner's post-conviction appeal was unsuccessful, *Elkins v. State*, No. E2005-02153-CCA-R3-PC, 2008 WL 65329 (Tenn. Crim. App. Jan. 2, 2008), *perm. to app. den.* (Tenn. 2008) [*Id.*, Attach. 4], and he now applies for a federal writ of habeas corpus, asserting two main grounds for relief: 1) insufficient evidence and 2) several claims of ineffective assistance of counsel.

## II. Factual Background

According to the proof presented at trial, the then eleven-year-old male victim, B. G., was living with his maternal grandmother during the relevant time frame.[2] Petitioner, who was the boyfriend of the victim's mother, stayed at the grandmother's home at times. In early April, 1997, petitioner entered B.G.'s bedroom at night, where he was lying face down on the bed, clad only in his underwear. Without undressing B.G., petitioner positioned himself on top of B.G. and began to

---

[2] The recitation of facts is taken from the state court opinion on direct review. *State v. Elkins*, 2002 WL 464799, *1 (Tenn. Crim. App. Mar. 27, 2002), *aff'd*, 102 S.W.3d 578 (Tenn. 2003). The state court identified the minor victim by initials, as will this Court.

bounce around. B.G. told petitioner to stop, but he refused. B.G. called for help and his first cousin, Roy Carrico, responded to his call, pulled petitioner off B.G., and warned petitioner never to touch him again. B.G. could not see petitioner's face, but identified him by the distinctive tattoos on his arm and hands. Embarrassed by the encounter, B.G. told no one about it.

Two weeks later, petitioner again entered B.G.'s bedroom, where he was lying on the bed listening to music. B.G.'s mother also entered the room and, as she sat in a bedside chair watching, petitioner removed his own pants and B.G.'s clothing, then climbed on top of her son, and anally penetrated him for some five minutes before ejaculating. Petitioner held a knife to B.G.'s throat and threatened to kill him if he told anyone what had happened. After the rape, B.G. could not control his bowel movements and soiled himself repeatedly.

A short time after the rape, B.G. was placed in foster care. In May, 1997, he reported the rape to his foster mother, who alerted the police and B.G.'s social worker. B.G. was taken to a physician for an examination. According to the physician, B.G.'s rectal opening had lost most of its natural tone and was slightly enlarged. The doctor also diagnosed B.G. as having "encopresis," which, he explained, is a condition which causes a slow, involuntary leakage of feces from the rectum and, often, is caused by forceful penetration by a finger, penis, or foreign object into the anal cavity.

At trial, the doctor testified that B.G.'s rectum was "slightly open or gaping when it should have been closed tight;" that this condition was consistent with what B.G. told him about being anally penetrated; and that B.G., though suffering psychological trauma from the rape, most likely developed encopresis as a result of the

physical injury sustained thereby.

### III. Standard of Review

The standard which controls the review of adjudicated claims is found in 28 U.S.C. 2254(d). Under this standard, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Also, a state court's findings of fact are presumed to be accurate and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *Spisak v. Mitchell*, 465 F.3d 684, 691 (6th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)).

### IV. Discussion

With these principles in mind, the Court turns to the claims which respondent contends do not justify issuance of the writ because they have been adjudicated by the state courts and because the resulting state court decision cannot be disturbed given the strictures on obtaining a writ under 28 U.S.C. § 2254(d).

A. **Insufficient Evidence**.

Petitioner first claims that the evidence is inadequate to sustain his conviction for rape of a child. More specifically, petitioner suggests that the evidence

4

hinged solely on the victim's credibility and that the contradictions in the victim's own testimony, as well as the contrary testimony of crucial witnesses, showed that his testimony was unworthy of belief, if not perjurious.

B.G.'s self-contradictions included his statement to his social worker that Mr. Carrico had raped him. This accusation was made, so B.G. testified at trial, because his "mom told [him] to tell [the social worker] that." However, B.G. also stated that he called his social worker back and correctly reported that petitioner was his assailant. On cross-examination, B.G. reversed what he had said on direct, insisting that he had told the social worker initially that petitioner had raped him. B.G. also made conflicting statements to law enforcement about whether his mother was present during the rape.

As to testimony by witnesses contrary to that of B.G., petitioner points first to the averrments of Mr. Carrico, a defense witness who was incarcerated on unrelated charges at the time of trial. This witness stated that he was uncertain that he was related to B.G., that he never saw petitioner attack the child, and that he never pulled him off the child. Likewise, B.G.'s mother, who admitted to a prior fraud conviction during her testimony, denied that she had tried to coerce her son to name Mr. Carrico as the perpetrator of the rape; denied any personal knowledge that the rape occurred; and stated that she "would have killed" petitioner and would not stand by and let petitioner "hurt [her] child."

Respondent opposes relief on this claim, arguing that the writ cannot be granted on the insufficient-evidence claim since the state courts properly found that the jury is entitled to weigh the evidence for itself.

5

When petitioner raised his claim on direct review, the Tennessee Supreme Court set forth the statutory elements of child rape, defining the offense as "the unlawful sexual penetration of a victim by the defendant . . . , if such victim is less than thirteen (13) years of age," and defining "penetration" as, *inter alia*, "*anal intercourse*, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body." *Elkins*, 102 S.W.2d at 582 (citing to Tenn. Code Ann. §§ 39-13-522(a) and 39-13-501(7) (1997) (italics in original). The state supreme court then summarized the evidence against petitioner, first indicating that there was no dispute that that B.G. was eleven years old when the offense occurred and that B. G. testified, at trial, that petitioner twice entered his room and climbed on top of him and that, on the second occasion,

> "[petitioner] removed his pants, then removed B.G.'s clothing, then raped B.G. He further stated that the anal penetration lasted for approximately five minutes and was painful. B.G. testified that his mother watched the attack from beside his bed while [petitioner] held a knife to his throat and threatened to kill him if he told anyone about the rape. After the incident, B.G. testified that he was unable to control his bowel movements for a period of time."

*Id.*

The highest state court also indicated that B.G.'s mother, the sole purported witness to the rape, had testified that her son was lying and that petitioner did not commit the rape in her presence, but it also pointed out her prior conviction for fraud. Corroborative of B.G.'s testimony, the state court held, was that of Dr. Heise, who expressed his opinion that the cause of B.G.'s physical condition (encopresis) was the result of anal penetration. The state supreme court then stated that the jury, by its verdict of guilt, clearly chose to believe B.G. over his mother and that

6

its verdict, under Tennessee law, accredited the testimony of the prosecution and resolved conflicting evidence in the prosecution's favor. It then reasoned that, given B.G.'s unwavering trial testimony that petitioner was his attacker, his prior inconsistent statements did not create a reasonable doubt as to petitioner's guilt of rape of a child. After concluding that it was "abundantly clear that a rational trier of fact could have found [petitioner] guilty beyond a reasonable doubt of child rape," the state court affirmed petitioner's conviction *Id.* at 583.

*Jackson v. Virginia*, 443 U.S. 307 (1979), was legal rule cited by the state court in its analysis of the claim. *Jackson,* which contains the bedrock principles on this type of claim, holds that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Gall v. Parker,* 231 F.3rd 265, 287-88 (6th Cir. 2000) (citing *Jackson,* 445 U.S. at 319). This standard of review does not permit the federal habeas court to make its own subjective determination of guilt or innocence, but assigns that responsibility to the trier of fact, who must resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Herrera v. Collins,* 506 U.S. 390, 401-02 (1993); *Jackson,* 445 U.S. at 319. The Sixth Circuit has previously found that the defendant "bears a very heavy burden" when claiming insufficiency of the evidence. *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986) (internal quotation marks and citation omitted). Here, the state court correctly identified *Jackson* as a source of the relevant legal precedent, and, thus, its decision is not contrary to the well-settled rule in *Jackson*.

7

The question then becomes whether the state court unreasonably applied *Jackson* to the facts of petitioner's case. The answer is "no." *Jackson* suggests that the task of a federal habeas court to determine the sufficiency of the convicting evidence should not be difficult, where a state court has "fully considered" that issue. *Jackson*, 445 at 322.

The convicting evidence in this case consisted of B.G.'s testimony that petitioner anally penetrated him and that of the doctor who performed an examination of B.G. and found that B.G.'s physical condition corroborated B.G.'s testimony that he had been raped. True, B.G.'s mother denied any knowledge of the rape and Mr. Carrico denied pulling petitioner off of the child. Likewise true, however, is that the jury obviously believed her son's and the doctor's testimony and disbelieved hers, as well as Mr. Carrico's.

As the Supreme Court has reminded us, *Jackson* clearly indicates that a decision as to inferences and conclusions to be drawn from evidence lies within the jury's purview. *Cavazos v. Smith*, __ S. Ct. __, __, 2011 WL 5118826, at * 1 (2011) (citing *Jackson*). *Jackson* also instructs that a federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id.*, 2011 WL 5118826 at *3 (quoting *Jackson*, 443 U.S. at 326) (ellipses added). Insofar as the Court can discern, this issue primarily involves two competing versions of the evening in question, B.G.'s and petitioner's, and the jury's obvious acceptance of the version offered by B.G., as bolstered by the testimony of the examining physician.

8

Thus, in view of all the proof in the record and because this issue is one of credibility, the disposition of which is to be evaluated under § 2244(d)'s "highly deferential standard," *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997)), the Court finds that the state supreme court's resolution of this claim was not an unreasonable application of the *Jackson* standard nor based on an unreasonable determination of the facts. *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) (noting that "our Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence") (citation omitted). Since petitioner's claim of insufficiency of the evidence does not pass either of § 2254(d)'s tests, it will be dismissed.

B. **Ineffective Assistance**.

Petitioner claims that, in several instances, his attorney gave him ineffective assistance. Petitioner raised these claims in his post-conviction proceedings and the state courts resolved them on the merits. The Court will now examine each alleged attorney error individually.

*1. Counsel failed to investigate and call two witnesses to testify for the defense.*

The first attorney error cited by petitioner is that counsel failed to call Barbara Shaffer and Shonda Wolliver as defense witnesses. Had Ms. Shaffer and Ms. Wolliver been called to the stand, so petitioner asserts, they would have testified that B.G., contrary to what he was claiming, did not tell them of the rape, thus, showing by their contradictory testimony that B.G. had committed perjury.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a claim for ineffective assistance has two components. First, a petitioner must show that counsel's

9

performance was deficient, i.e., that his lawyer simply was not functioning as the attorney guaranteed to him by the Sixth Amendment. Second, a petitioner must demonstrate that the deficiency in counsel's performance prejudiced the defense, i.e., that counsel's shortcoming deprived petitioner of a fair trial and, thus, rendered the outcome of the proceeding unreliable. *Id.* at 687-88.

Other guidelines emerge from *Strickland*. In considering the deficient-performance component, a reviewing court cannot indulge in hindsight, but must evaluate the reasonableness of counsel's performance under the circumstances existing at the time of the alleged errors. *Id.* at 690. Counsel's tactical decisions premised on a thorough investigation are particularly difficult to attack, given the presumption that the challenged actions might be considered sound trial strategy and the deference to be afforded to such decisions. *Id.* at 689-90. Moreover, an attorney "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the prejudice component of *Strickland*, a petitioner must show that, absent his attorney's errors, there is a reasonable probability that the result of his trial would have been different, *id.* at 694, though "[c]ertainty of a different outcome is not required." *Walker v. McQuiggan*, 656 F.3d 311, 317 (6th Cir. 2011). An attorney error, even if professionally unreasonable, does not justify vacating a criminal judgment if the error did not affect the judgment. *Strickland*, 466 U.S. at 691. A defense attorney gives ineffective assistance by failing to interview a potentially important witness before deciding not to call him to testify, where there exists a

10

Case 2:08-cv-00266 Document 15 Filed 11/14/11 Page 10 of 20 PageID #: 144

reasonable probability of acquittal had the witness testified. *Towns v. Smith*, 395 F.3d 251, 258–61 (6th Cir. 2005).

As the state courts recognized, *Strickland* supplies the controlling Supreme Court precedent with respect to ineffective-assistance claims. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("We established the legal principles that govern claims of ineffective assistance of counsel in *Strickland* []."). When the state court considered this claim, it cited to *Strickland* and to *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1995),[3] as enunciating the relevant standards by which to evaluate a claim of ineffective assistance. Since the state court applied the *Strickland* framework to this claim and all subsequent ineffective assistance claims, the disposition of this claim and all other such claims was not contrary to that legal rule.

To determine whether the state-court decision resulted from an unreasonable application of that framework, this Court examines the state court's analysis of this claim.

The state court first reviewed the proof offered at the post-conviction hearing, noting that counsel had testified that he had spoken with both witnesses, that Ms. Shaffer was very angry at petitioner, and that she would have hurt him with her testimony. Ms. Woliber, so counsel stated, had volunteered no information helpful to the defense. Counsel stated that, under these circumstances, he decided not to call the two women as witnesses. The attorney further testified that he and petitioner had

---

[3] In *Baxter*, the Tennessee Supreme Court held that a defendant who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test.

11

discussed the advantages and disadvantages of presenting each potential witness. Moreover, as the state court noted, both witnesses testified at the hearing that they knew nothing about the rape until after petitioner had been charged with the offense.

The state court then determined that petitioner's attorney had interviewed the proposed witnesses, had made a strategic decision not to call them, and that, in any event, the witnesses would not have helped petitioner's defense. The state appellate court declined to grant relief.

A state court's finding that counsel made a strategic decision with respect to a trial matter is a factual finding which cannot be superseded unless it was based, at the very least, on an unreasonable determination of the facts in light of the evidence presented at the state evidentiary hearing. *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Here, the state court's finding that counsel's decision was tactical has full support in the record. After all, counsel testified that he interviewed each witness and that, based on the information thus obtained, he determined that they would not assist the defense.

The testimony the witnesses gave at the evidentiary hearing (i.e., that they had no knowledge of the sexual assault against B.G. until petitioner was charged with that crime) confirms that the defense would have gained nothing from presenting them at trial and conceivably might have elicited unfavorable information had one witness's testimony been negatively affected by her anger towards petitioner. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) ("A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant.").

The Court now finds that *Strickland* was not unreasonably applied when

12

the state court concluded that counsel's decision was strategic and, implicitly, that it did not constitute a deficient performance. *See Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009) (noting that judicial review of a claim of ineffective assistance under § 2254 is double deferential). But even if the decision was not based on a thorough investigation and can be viewed as a deficiency of performance, there is no resulting prejudice— a conclusion also implicit in the state court's finding that the witness would not have helped the defense. "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692.

The failure to call a witness who offers no benefit to the defense has no effect on the proceedings and, hence, cannot not produce a reasonable probability of a different outcome. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic") (citation omitted). Petitioner is entitled to no relief because the state courts did not unreasonably apply *Strickland* in adjudicating his claim.

*2. Counsel failed to request jury instructions on a lesser-included offense of child rape and to raise this issue in the motion for a new trial or on appeal.*

As the first attorney error in this category, petitioner alleges that trial counsel failed to request a jury instruction on misdemeanor child abuse, a lesser included offense of rape of a child. The second claimed attorney shortcoming is that, in the motion for a new trial and on direct appeal, counsel failed to challenge the lack of a jury instruction on this lesser included offense.

13

### a. Trial Counsel Error

Under Tennessee law in effect at the time of trial, according to petitioner, a trial court was required to give instructions on lesser offenses supported by the evidence, even absent a request for such an instruction. Petitioner asserts that in his case, there was overwhelming support for this instruction and that, had it been given, he would likely have been convicted of misdemeanor child abuse—not the felony of rape of a child.

The post-conviction court considered, as an instance of ineffective assistance, counsel's failure to request an instruction on lesser-included offenses with respect to the offense of child rape, [Doc. 7, Attach. 3]. The lower state court identified *State v. Burns*, 6 S.W. 3d 453 (Tenn. 1999), a case issued the month after petitioner's trial, as establishing a new test for determining when a lesser-included-offense instruction was required. The state court held that the rule in *Burns* was not in existence at the time of trial but that it did apply to petitioner's case on direct appeal. Even so, the post-conviction court held that its failure to include a charge on the lesser included offense of child abuse, under *Burns* and the Tennessee Constitution, was an error. The state court ultimately concluded that petitioner was not entitled to relief on his ineffective-assistance claim.

When this issue was carried to state appeals court, it found that the law on lesser included offenses prior to *Burns* was confusing and unclear and that the holding in *Burns* and the impact it would have on state jurisprudence was unknown to trial counsel. Observing that counsel is not required to be prescient, the state court found that trial counsel's failure to foretell the course of future developments in the law

14

did not amount to a deficiency of performance.

*Strickland* instructs reviewing courts to evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors rather than viewing those claimed errors in hindsight. *Strickland*, 466 U.S. at 690. Because *Burns* was not the law at the time of counsel's supposed error, the state court's application of *Strickland* to trial counsel's representation was objectively reasonable and furnishes no basis for relief. *See Williams v. Taylor*, 529 U.S. 362, 409 (2000) (finding that a "unreasonable application" of clearly established federal law" is one that is "objectively unreasonable").

b. Appellate Counsel Error

Petitioner further asserted that, had the jury instructions issue been raised on appeal, his conviction would have been reversed. The intermediate state court first addressed *Strickland*'s deficient-performance prong, reasoning as follows:

> Although the law at the time of trial may be confusing and unclear, it may be settled and clear at the time of appellate consideration. We recognize *Burns* as a landmark case that set a new standard for determination of what lesser included offenses were but, equally important and more germane to the issues at hand, sought to explain when a lesser included offense instruction was required. When a lesser included offense instruction was required, pre-*Burns*, was confusing and unclear.
>
> Next, we determine whether appellate counsel rendered deficient performance for failing to raise a challenge to the trial court's failure to charge any lesser included offenses post-*Burns*. *Burns* was filed on November 8, 1999. Petitioner Elkins' case was not argued before our supreme court until January 7, 2003, and its opinion was filed on April 20, 2003.
>
> We conclude that an objectively reasonable attorney, keeping abreast of legal developments related to his case as he should, would have discovered *Burns* as providing his client a solid, meritorious argument and providing controlling precedent as to when a trial court must charge

15

> lesser included offenses, which should have been discovered by appellate counsel and brought to the court's attention. Although we are unable to be certain as to what month or week appellate counsel should have discovered such a meritorious argument, it was clearly before argument was scheduled in our supreme court on January 7, 2003.
>
> . . .
>
> Upon this record, we conclude that appellate counsel was deficient in his performance in failing to discover or bring to the court's attention the *Burns* issue on behalf of this petitioner.

*Elkins*, 2008 WL 65329, at *6-*7. Though petitioner offered the instant claim to the state appeals court, it did not discuss whether the cited deficiency of performance resulted in prejudice to petitioner in connection with the child rape conviction.

Since the post-conviction court was the last state court to determine whether petitioner had suffered prejudice from appellate counsel's deficient performance in the context of his child-rape conviction, this Court will examine the lower state court's disposition of the prejudice issue in order to consider the habeas claim raised here. *Guilmette v. Howes*, 624 F.3d 286, 291-292 (6th Cir. 2010) (noting, in the context of procedural default, a presumption arises that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground") (citing to *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

In its opinion on this claim [Doc. 7, Attach. 3], the state post-conviction court pointed out that the instructional error could be examined for harmless error. Under this analysis, an error will be overlooked so long as it was harmless beyond a reasonable doubt and the error would fit within this definition if it did not affect the outcome of the trial. The lower state court looked at the proof offered at trial and the

16

Case 2:08-cv-00266 Document 15 Filed 11/14/11 Page 16 of 20 PageID #: 150

findings made while the case was on direct review, one of which was that the proof of guilt was so strong that there could be no reasonable doubt that petitioner committed the crime of child rape.

The lower state court then pointed to B.G.'s trial testimony concerning penetration, which consisted of his statements that petitioner put his "wiener" in B.G.'s rectum and that this ordeal lasted about five minutes, following which B.G. felt a "gooey" substance. B.G. also stated that petitioner threatened to kill him. In addition, the trial court noted that medical testimony was given that B.G.'s stretched rectum and encopresis (soiling of pants) was consistent with an object being inserted into his rectum. The lower state court took note of a prior state supreme court decision, in which that court had found harmless error, based on a clear showing of penetration.

The state court then made several observations, the first of which was that, in its charge to the jury, it had instructed on child rape, which had "penetration" as an element, as well as the lesser included offenses of sexual battery and assault by offensive touching, neither of which had that element. Having received all these instructions, the jury had returned a guilty verdict on child rape—the only offense which required penetration.

The lower state court reasoned that, by rejecting the lesser included offenses which did not require penetration, the jury, thereby, had rejected all lesser included offenses which likewise did not require that element. Consonant with the finding on direct appeal, the post-conviction court found that evidence of rape of a child was overwhelming, then concluded that the error was harmless beyond a reasonable doubt and, finally determined that counsel's failure to raise the instructional

17

error on appeal had not prejudiced petitioner's defense on the child rape charge.

To find prejudice, under *Strickland*, petitioner must show that his "trial cannot be relied on as having produced a just result, or in the case of his appeal, that there is it is reasonably probable that counsel's inclusion of the instructional error on appeal would have "changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 6909 (6th Cir. 2004) (citation omitted).[4] Absent such prejudice, there is no constitutional error. *Lockhart v. Fretwell*, 506 U.S. 364, 370 n.2 (1993).

Here, given the post-conviction court's finding that, if the instructional error had been pressed on appeal, relief would have been neither warranted or granted on petitioner's child rape conviction, it is clear that no prejudice resulted from counsel's omission and that the state court did not unreasonably apply *Strickland* in so concluding. *See Briseno v. Cockrell* 274 F.3d 204, 210 (5th Cir. 2001) (pointing out that prejudice from an appellate counsel's error depends on a showing that the state court "would have vacated or reversed based on that error").

Petitioner has failed to bear his burden under §2254 and no writ will issue on this claim of ineffective assistance on the part of his appellate attorney. *See Bobby v. Dixon*, __ U.S. __, __, 2011 WL 5299458, *1 (2011) ("Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a

---

[4] Although *Brecht v. Abrahamson*, 507 U.S. 619 (1993), provides the standard of review for a state court's harmless error finding, the Court need not revisit that state court finding, since "[t]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Thus, only the state court's decision on *Strickland* prejudice will be examined.

federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (per curiam) (internal citation marks and citation omitted).

## V. Conclusion

For the reasons discussed above, the writ will be **DENIED** and this case will be **DISMISSED**.

## VI. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's assessment of his constitutional claims. *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court has found that petitioner's claims, all of which were adjudicated in state court, would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts disposed of those claims by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the

19

Case 2:08-cv-00266 Document 15 Filed 11/14/11 Page 19 of 20 PageID #: 153

resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

An order of judgment will enter separately.

**ENTER**:

_____
LEON JORDAN
UNITED STATES DISTRICT JUDGE